# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

MOHAMED AHMED
MOKBEL-ALJAHMI,

        Plaintiff,              CIVIL ACTION NO. 16-cv-12075

        v.                  DISTRICT JUDGE ROBERT H. CLELAND

COMMISSIONER OF            MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Mohamed Ahmed Mokbel-Aljahmi seeks judicial review of Defendant Commissioner of Social Security's determination that he is not entitled to social security benefits for his physical and mental impairments under 42 U.S.C. § 405(g).  (Docket no. 1.)  Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 12) and Defendant's Motion for Summary Judgment (docket no. 13).  Plaintiff filed a Reply (docket no. 14) to Defendant's Motion.  The motions have been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  (Docket no. 3.)  The Court has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

## I.      RECOMMENDATION

For the reasons that follow, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 12) be **DENIED** and Defendant's Motion for Summary Judgment (docket no. 13) be **GRANTED**.

## II.    PROCEDURAL HISTORY

Plaintiff protectively filed applications for a period of disability and disability insurance benefits on July 19, 2011, alleging that he has been disabled since February 13, 2011, due to "[b]ack and leg injuries from accident; heart blockage."  (TR 333, 386.)  The Social Security Administration denied Plaintiff's claims on January 26, 2012, and Plaintiff requested a *de novo* hearing.  (TR 159–68, 179–80.)  On May 9, 2013, Plaintiff appeared with a representative and testified at the hearing before Administrative Law Judge (ALJ) John J. Rabaut.  (TR 81–108.)  In a June 14, 2013 decision, the ALJ found that Plaintiff had the residual functional capacity (RFC) to perform a limited range of light work as defined in 20 C.F.R. §§ 404.1567(a) and was not entitled to benefits because he was capable of performing a significant number of jobs in the national economy.  (TR 131–52.)  The Appeals Council reviewed and vacated ALJ Rabaut's decision on the basis that the jobs identified by the vocational expert in the first hearing as available to Plaintiff (packer, inspector, and small products assembler), require frequent handling per the Dictionary of Occupational Titles, while the ALJ had determined that Plaintiff was limited to occasional handling, and the ALJ's decision did not address or reconcile this conflict.  (TR 154.)  The Appeals Council therefore remanded Plaintiff's case back to the ALJ with instructions to "[o]btain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base . . . . [and] identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles."  (*Id.*)

On remand, on January 12, 2015, Plaintiff again appeared with a representative and testified at a hearing before ALJ Rabaut.  (TR 47–80.)  In a July 21, 2015 decision, the ALJ

found that Plaintiff was not entitled to benefits because he was capable of performing a significant number of jobs in the national economy. (TR 17–39.) The Appeals Council declined to review the ALJ's decision (TR 1–6), and Plaintiff commenced this action for judicial review. The parties then filed cross motions for summary judgment, which are currently before the court.

## III. HEARING TESTIMONY AND MEDICAL EVIDENCE

Plaintiff (docket no. 12 at 3–14) and the ALJ (TR 26–36) have set forth detailed, factual summaries of Plaintiff's medical record and the hearing testimony. Defendant incorporated the ALJ's factual summary by reference into her brief. (Docket no. 13 at 3.) Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies among these recitations of the record. Therefore, in lieu of re-summarizing this information, the undersigned will incorporate the above-cited factual recitations by reference and will also make references and citations to the record as necessary to address the parties' arguments throughout this Report and Recommendation.

## IV. ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of February 13, 2011, and that Plaintiff suffered from the following severe impairments: degenerative disc disease at L5-S1 and the cervical spine; degenerative joint disease of the bilateral shoulders; small tear of the bilateral rotator cuffs; bilateral carpal tunnel syndrome; knee impairment; asthma; obesity; and adjustment disorder with depressed mood. (TR 23.) Additionally, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR 24–26.) The ALJ then found that Plaintiff had the following RFC:

[C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except experience [sic] and with an ability to perform work

activities as follows: light work as defined by the DOT with no climbing ladders, ropes or scaffolds; only occasional climbing ramps and stairs, balancing, stooping, crouching and kneeling; no crawling; no overhead reaching and handling; frequent fingering; avoiding concentrated exposure to extreme cold, heat, wetness and humidi[ty], environmental irritants, and poorly ventilated areas, avoiding concentrated use of moving machinery and all exposure to unprotected heights; only occasional decision-making and changes in the workplace setting; and only occasional interaction with the general public.

(TR 26–37.)  Subsequently, in reliance on the vocational expert's (VE's) testimony, the ALJ determined that Plaintiff was capable of performing a significant number of jobs in the national economy.  (TR 37–38.)  Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time from June 17, 2011, through the date of the decision.  (TR 38.)

## V.    LAW AND ANALYSIS

### A.    Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions.  Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997).  Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528.  It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility.  *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts"). "But '[a]n ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013) (quoting *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir. 2011)).

### B.      Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)      Plaintiff was not presently engaged in substantial gainful employment; and

(2)      Plaintiff suffered from a severe impairment; and

(3)      the impairment met or was medically equal to a "listed impairment;" or

(4)      Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past

work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

### C.     Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff asserts that this matter should be reversed and/or remanded under sentence four because (1) "[t]he ALJ's RFC finding, which is contradicted by the overwhelming evidence of

record, cannot be deemed supported by substantial evidence"; (2) "[t]he ALJ reversibly erred by failing to conduct a proper evaluation of the opinion from Dr. Al-najjar, [Plaintiff's] treating psychiatrist"; (3) "[t]he ALJ did not properly assess [Plaintiff's] subjective complaints and credibility"; and (4) "[t]he ALJ failed to sustain the Commissioner's burden of proof at step five to establish that there is other work in the national economy that [Plaintiff] can perform." (Docket no. 12 at 1–2.)

### 1. The ALJ's Formulation of Plaintiff's RFC

Plaintiff first challenges the ALJ's formulation of Plaintiff's RFC, arguing that it goes against the weight of the medical opinion evidence, and that it fails to account for Plaintiff's documented limitations as to reaching and postural limitations like bending and stooping. (Docket no. 12 at 14–17.)

The RFC is the Commissioner's ultimate finding about the claimant's ability to perform work-related activities. SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996). It is defined as the most, not the least, the claimant can do despite her impairments. 20 C.F.R. §§ 404.1545(a), 416.956(a). The ALJ derives the RFC after considering the medical and other relevant evidence in the record. *Id.* He must support the RFC by including a narrative discussion describing how the evidence supports his conclusions and providing citations to specific medical facts and nonmedical evidence. SSR 96-8, 1996 WL 374184, at *7 (July 2, 1996). In determining the RFC, the ALJ must discuss the claimant's ability to perform sustained work activities in an ordinary setting on a regular and continuing basis. *Id.* "The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.*

The ALJ summarized the evidence supporting his formulation of Plaintiff's RFC as follows:

> The totality of the evidence demonstrates some limitations in the claimant's residual functional capacity. In reducing the claimant's exertional level to light work and limiting his postural activities, I considered the objective findings of mild degenerative changes in the spine, long-term treatment with pain medication, epidural and knee injections, and frequent observations of back tenderness. I also considered the objective evidence of mild carpal tunnel syndrome and observations of limited shoulder motion in precluding the claimant from overhead reaching and limiting his fine manipulation. The claimant's history of asthma with wheezing warrants limiting his exposure to environmental temperatures and irritants with the potential to trigger or exacerbate symptoms. Finally, the record demonstrates a history of treatment with narcotic pain medications and, as discussed below, treatment for depression, both of which could reasonably be expected to affect the claimant's concentration. The undersigned addressed this limitation by limiting the claimant's exposure to hazards, as his impairments increase his risk of injury in such environments.

(TR 33.) The ALJ also specifically discussed how most of Plaintiff's diagnostic studies are from 2011, shortly following the car accident that led to many of Plaintiff's impairments, and that these studies "reveal moderate abnormalities that would reasonably be expected to cause chronic pain, but not the debilitating fatigue, immobility, and lack of dexterity alleged." (TR 27.) The ALJ further discussed how imaging studies from February 2013 revealed "minimal degenerative osteoarthritic changes" in Plaintiff's knees and shins, and a "narrowing and vacuum disc phenomenon at LS-S1 and anterior offset of L5 on S1, but no fracture, dislocation, or bony destruction." (TR 28.) The ALJ also gave "significant weight" to portions of the examination report completed by the consultative examiner Katherine Karo, D.O., particularly her opinion that Plaintiff is able to ambulate without the use of a cane. (TR 33.) Dr. Karo's exam report further provides that Plaintiff's gait is normal, and that "[t]here is no physical limitation of sitting, standing and walking." (TR 869.)

Plaintiff argues that his treating physicians, the consultative examiner, and the State agency physician all opined that Plaintiff was more limited than the ALJ found. Nevertheless, the ALJ considered and discounted each of their opinions, which Plaintiff does not challenge (except for with regard to Plaintiff's treating psychiatrist, which is addressed below). And, the ALJ's decision not to adopt the opinions of Plaintiff's treating and examining physicians does not warrant reversal where, as here, the ALJ's decision is otherwise supported by substantial evidence. Indeed, "the ALJ is charged with the responsibility determining the RFC based on her evaluation of the medical and non-medical evidence." *Rudd v. Comm'r of Soc. Sec.*, 531 Fed. App'x 719, 728 (6th Cir. 2013). "[T]o require the ALJ to base her RFC finding on a physician's opinion, would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled." *Id.* (internal quotation marks and citation omitted).

Plaintiff also specifically attacks the ALJ's assigned limitations concerning Plaintiff's ability to reach, and perform other postural activities, like stooping and balancing.

Plaintiff first argues that the "ALJ's failure to address or incorporate *any* reaching limitation other than overhead into the RFC assessment is not supported by substantial evidence." (Docket no. 12 at 16.) More specifically, Plaintiff argues that "[t]he ALJ addressed only overhead reaching, failing to meaningfully address the evidence that [Plaintiff] was limited in his reaching as to any other directions." (*Id.*)

The undersigned finds that the ALJ's decision concerning Plaintiff's ability to reach is supported by substantial evidence in the record. Specifically, as Defendant points out and as the ALJ emphasized, Plaintiff's treating internist Mahmood Rahim, M.D., found that Plaintiff had

"normal movement of all extremities" during several different exams. (TR 921, 926, 996.) Moreover, the State agency physician, Dinesh Tanna, M.D., found that Plaintiff was only limited in his ability to reach overhead, not in all directions. (TR 126.) The ALJ gave Dr. Tanna's opinion "little weight," but not "no weight." (TR 33.) And, it is clear from the ALJ's decision that the ALJ specifically disapproved of Dr. Tanna's opinions concerning Plaintiff's capacity for lifting, standing, and talking, which the ALJ found were "inconsistent with treating and examining source observations." (*Id.*)

In support of his argument that the ALJ failed to meaningfully address evidence supporting a greater limitation for reaching in all directions (other than overhead), Plaintiff cites a number of upper-body diagnoses reflected in the record, including "shoulder impairment, cervical disc disease, and cervical radiculopathy," and "torn rotator cuffs and bilateral shoulder pain." (Docket no. 12 at 16.) This argument fails because, first, there is no requirement that the ALJ discuss every piece of evidence in the administrative record, *Kornecky v. Comm'r of Soc. Ec.*, 167 F. App'x 496, 508 (6th Cir. 2006) (citation omitted), and second, the ALJ did discuss most, if not all, of these issues. Indeed, the ALJ found that a number of these conditions were severe impairments (degenerative disc disease of the cervical spine, degenerative joint disease of the bilateral shoulders, and small tear of the bilateral rotator cuffs). (*See* TR 23.)

Plaintiff also argues that the ALJ reversibly erred by finding Plaintiff was capable of occasionally bending, stooping, and performing other postural activities. (Docket no. 12 at 17.) The undersigned disagrees. As with reaching, the ALJ's decision concerning Plaintiff's ability to occasionally perform postural activities is supported by the opinion of Dr. Tanna, the State agency physician. Like the ALJ, Dr. Tanna found that Plaintiff was capable of occasional stooping, kneeling, crouching, and crawling. (TR 126.) Plaintiff argues that Dr. Tanna's opinion

concerning Plaintiff's postural abilities is inconsistent with Dr. Tanna's opinion that Plaintiff can stand and/or walk up to two hours in a normal eight-hour workday. (Docket no. 12 at 17.) However, as noted above, the ALJ's decision reflects that the ALJ did not credit Dr. Tanna's opinion concerning Plaintiff's ability to stand. (TR 33.) Moreover, Dr. Kano, the consultative examiner, found that Plaintiff was able to "squat in full without pain" and "bear weight on the right, on the left and bilaterally without pain." (TR 869.) The ALJ assigned "significant weight" to this portion of Dr. Kano's examination report. (TR 33.)

The undersigned has reviewed the ALJ's decision and the record, and finds that the ALJ's decision not to incorporate a limitation for reaching in all directions or for bending and stooping into the RFC is supported by substantial evidence. While there is indeed evidence that tends to support Plaintiff's assertions, there is also substantial evidence supporting the ALJ's decision. This issue therefore falls within the ALJ's zone of choice, and there is no error here. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc).

### 2. The ALJ's Assessment of Dr. Al-Najjar's Opinion

Plaintiff next argues that the ALJ erred in his assessment of the opinion of Mufid Al-najjar, M.D., Plaintiff's treating psychiatrist, who began treating Plaintiff in May 2011, and continued to treat him as late as September 2014. Dr. Al-najjar completed a Mental Capacities Evaluation on May 17, 2012. (TR 772–78.) In the Evaluation, Dr. Al-najjar opined that Plaintiff had "no useful ability to function" in many areas, including maintaining social function; performing activities of daily living; maintaining concentration, persistence, or pace; understanding, carrying out, and remembering simple instructions; performing simple tasks; independently performing routine repetitive tasks; making simple work-related decisions; responding appropriately to supervision; and many other areas. (*Id.*) Dr. Al-najjar also found

that Plaintiff could not meet competitive standards in the few remaining areas, including using judgment, relating appropriately to supervisors and co-workers, relating appropriately to the public, adhering to basic standards of neatness and cleanliness, and responding appropriately to "usual work situations." (*Id.*)

It is well settled that the opinions of treating physicians are generally accorded substantial deference. In fact, the ALJ must give a treating physician's opinion complete deference if it is supported by clinical and laboratory diagnostic evidence and it is not inconsistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). When an ALJ determines that a treating source's medical opinion is not controlling, he must determine how much weight to assign that opinion in light of several factors: (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; (5) specialization of the treating source; and (6) other factors. 20 C.F.R. §§ 404.1527(c)(2)–(6), 416.927(c)(2)–(6).

There is no *per se* rule that requires an articulation of each of the six regulatory factors listed in 20 C.F.R. §§ 404.1527(c)(2)–(6), 416.927(c)(2)–(6). *Norris v. Comm'r of Soc. Sec.*, No. 11-CV-11974, 2012 WL 3584664, at *5 (E.D. Mich. Aug. 20, 2012) (citing *Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010)). An ALJ's failure to discuss the requisite factors may constitute harmless error (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possible credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the Commissioner has met the goal of [1527(c)]—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." *Nelson v. Comm'r*

*of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004)).

The Commissioner requires its ALJs to "always give good reasons in [their] notice of determination or decision for the weight [they] give [a] treating source's opinion." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Those good reasons must be "supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson*, 378 F.3d at 544 (quoting SSR 96-2p, 1996 WL 374188, at *5 (1996)). The district court should not hesitate to remand when the Commissioner has failed to identify the weight assigned to a treating physician's opinion and provide good reasons for that weight. *See Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011) ("This Court has made clear that '[w]e do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.") (citing *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009)).

After detailing Dr. Al-najjar's treatment records,[1] the ALJ concluded:

> Dr. Al-Najjar's treatment records and observations confirm that the claimant requires psychiatric treatment for depression, and that his combined impairments—mood impairment, physical pain, and medication side effects— could reasonably be expected to limit the claimant's capacity for prolonged

---

[1] The ALJ notes that Dr. Al-najjar's treatment notes from May through September 2011 were handwritten and "largely illegible." (TR 34.) Plaintiff attempts to make an issue out of this comment, arguing "the ALJ's invocation of illegibility as to [these] notes was improper," and that "the ALJ apparently assumed these notes were not supportive of Dr. Al-najjar's opinion." (Docket no. 12 at 19.) As discussed in this Report, the undersigned finds no error with the ALJ's evaluation of Dr. Al-najjar's opinion, and the ALJ provides good reasons for discounting his opinion apart from the fact that a portion of Dr. Al-najjar's treatment notes were handwritten. Moreover, the handwritten notes covered only a short span of time (five months) of the years-long treatment relationship between Plaintiff and Dr. Al-najjar, and it does not appear the ALJ assumed they did or did not support Dr. Al-najjar's opinion.

concentration, pace, and persistence. However, the totality of evidence does not demonstrate disabling limitations in the claimant's social or cognitive functioning.

> In May 2012, Dr. Al-Najjar opined that the claimant had "No useful ability to function" in his ability to perform work-related mental [activities], including understanding and carrying out simple instructions, performing work requiring regular contact with others, and completing a normal workday/workweek without interruptions from psychological symptoms (Exhibit 13E/1–7). I afforded little weight to this opinion because it is inconsistent with the totality of evidence, including Dr. Maaz's [Plaintiff's treating neurologist's] observations.

(TR 35.) In evaluating Dr. Al-najjar's opinions, the ALJ also detailed Dr. Maaz's treatment records, which provided, at various points from 2012 through 2015, that Plaintiff was "oriented to person, place, and time," had "clear" speech and "intact" memory to "immediate, recent, and remote events," with "no deficits . . . on the mental status examination." (TR 34, 811, 814, 817.) The ALJ also mentioned Dr. Maaz's repeated findings that "[n]aming, calculation, and subtract through processes are all intact." (*Id.*)

Plaintiff contends that the ALJ ignored the "less extreme" limitations assessed by Dr. Al-najjar, i.e., those areas where the Dr. Al-najjar opined that Plaintiff "cannot meet competitive standards," (versus the areas where Dr. Al-najjar opined that Plaintiff has "no useful ability to function"), because the ALJ did not discuss them explicitly in his decision. The undersigned finds this argument unpersuasive.

Dr. Al-najjar was presented with approximately 20 questions concerning Plaintiff's mental abilities, and he was required to answer the questions by circling "none" (indicating no problem with that ability), "mild," "seriously limited but not precluded," "cannot meet competitive standards," and finally, "no useful ability to function." (TR 772–78.) First, although the ALJ did not specifically discuss the questions that Dr. Al-najjar answered "cannot meet competitive standards," he was not required to; and furthermore, it is clear that he read and

considered the entire report. Dr. Al-najjar answered "no useful ability" far more often than he answered "cannot meet competitive standards," and the "no useful ability" answers are mixed in with his "cannot meet competitive standards" answers. (*See id.*) No reasonable person would conclude from reading the ALJ's decision and Dr. Al-najjar's report that the ALJ somehow overlooked the comparatively few "cannot meet competitive standards" answers. Second, the difference, for purposes of Plaintiff's disability application, between "cannot meet competitive standards" and "no useful ability to function" is unclear, and seems trivial at best. Third, many of the questions overlapped, yet Dr. Al-najjar answered them inconsistently. For example, he stated that Plaintiff "cannot meet competitive standards" in "respond[ing] appropriately to usual work situations," but that Plaintiff has "no useful ability to function" in "respond[ing] appropriately to the stress of customary work pressures in work environment." (TR 775.) He also answered that Plaintiff "cannot meet competitive standards" in his ability to "relate appropriately to supervisors and co-workers" and to "relate appropriately to the public," but that Plaintiff has "no useful ability to function" with regard to "perform[ing] work requiring regular contact with others." (TR 774–75.) Under these circumstances, the undersigned finds that the ALJ did not ignore or "fail to address" Plaintiff's "less extreme limitations." (Docket no. 12 at 19.)

Finally, and to address Plaintiff's second argument concerning the ALJ's assessment of Dr. Al-najjar's opinion, the ALJ gave good reasons for discounting Dr. Al-najjer's opinion. As quoted above, the ALJ gave "little weight" to Dr. Al-najjar's opinion because "it is inconsistent with the totality of the evidence, including Dr. Maaz's observations." (TR 35.) The ALJ discussed how, during the same time period that Dr. Al-najjar opined that Plaintiff was extremely limited in his ability to function, Dr. Maaz opined that Plaintiff had "no deficits." (TR 34.) The

ALJ clearly acknowledged Dr. Al-najjar's specialty as a psychiatrist, as compared to Dr. Maaz's specialty as a neurologist, but correctly noted that "[n]eurology and psychiatry both require evaluation of an individual's mental functioning." (*Id.*) The ALJ also discussed how, despite the fact that Dr. Al-najjar reported "poor memory and concentration" in Plaintiff throughout his treatment relationship (with periods of improvement), Dr. Al-najjar did not change Plaintiff's medications from October 2012 through September 2014. (*Id.*) Finally, the ALJ noted that Plaintiff reported "daily activities, including self-care and cognitive activities, in a *Function Report* that are inconsistent with serious functional limitations." (TR 35.) Each of these points goes to the supportability of the opinion, and the consistency of the opinion with the record as a whole. 20 C.F.R. §§ 404.1527(c)(3)–(4).

The ALJ also clearly acknowledged the factors that would weigh in favor of crediting Dr. Al-najjar's opinion, including his specialty as a psychiatrist, and the fact that he had a fairly long-term treating relationship with Plaintiff. (TR 34.) The ALJ weighed these factors against the fact that Dr. Al-najjar's opinion was not supported by substantial evidence, was not well-supported, and was not consistent with the record as a whole.

Plaintiff argues that the ALJ failed to consider the "fluctuating nature of mental illness," and that "the ALJ did not meaningfully account for the psychiatrist's consistent observations of poor memory and concentration." (Docket no. 12 at 20, 22.) Both of these arguments fail. The ALJ did note that Plaintiff experienced improvement in his symptoms; the ALJ simply found that overall Plaintiff was not as limited as Dr. Al-najjar opined. The ALJ also clearly addressed Plaintiff's memory and concentration problems, by limiting Plaintiff to only occasional decision-making and changes in the workplace setting; and only occasional interaction with the general public. (TR 26.) The ALJ also noted that Plaintiff's pain medication and depression "could

reasonably be expected to affect the claimant's concentration," and "addressed this limitation by limiting the claimant's exposure to hazards, as his impairments increase his risk of injury in such environments." (TR 33.)

In sum, the undersigned finds that the ALJ adequately considered and addressed Dr. Al-najjar's opinion, and provided good reasons for assigning the opinion little weight, which are supported by the evidence of record and are sufficiently specific to clarify the reasons for that weight. Plaintiff's Motion should be denied with regard to this issue.

### 3. The ALJ's assessment of Plaintiff's credibility

Plaintiff next asserts that the "ALJ's credibility assessment cannot be deemed supported by substantial evidence." (Docket no. 12 at 22.) "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). But credibility assessments are not insulated from judicial review. Despite the deference that is due, such a determination must nonetheless be supported by substantial evidence. *Id.* An ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p.[2] "It is not sufficient to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" *Id.* "[T]he adjudicator may find

---

[2] SSR 96-7p has been superseded by SSR 16-3p, effective March 28, 2016. *See* SSR 16-3p, 2016 WL 1119029, at *1; 2016 WL 1237954. Nevertheless, because the ALJ's decision in this matter was rendered prior to the effective date of SSR 16-3p, the ALJ was not obligated to comply with SSR 96-7p. *See Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) ("The Act does not generally give the SSA the power to promulgate retroactive regulations.").

all, only some, or none of an individual's allegations to be credible" and may also find the statements credible to a certain degree." *Id.*

Further, to the extent that the ALJ found that Plaintiff's statements were not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. §§ 404.1529(c)(2). The ALJ will consider: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, for symptom relief; (6) any measures used to relieve the symptoms; and (7) functional limitations and restrictions due to the pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3); SSR 96-7p; *see also Felisky v. Bowen*, 35 F.3d 1027, 1039–40 (6th Cir. 1994) (applying these factors). As part of his argument, Plaintiff asserts that the ALJ failed to consider these factors. (Docket no. 12 at 22–24.)

Here, the ALJ considered and discussed Plaintiff's hearing testimony and other subjective complaints of pain in conjunction with the record evidence, and he found that Plaintiff's allegations were not entirely credible. The ALJ first detailed Plaintiff's testimony (TR 26–27), then explained that, "[t]he record contains several diagnostic studies that demonstrate some abnormalities in the claimant's joints and spine, but not of a degree that would reasonably be expected to produce the extreme limitations alleged in the hearing testimony" (TR 27). For example, Plaintiff testified that he could not sit for more than 15 minutes at a time and that he required a cane to ambulate, but the ALJ notes that a 2011 MRI of Plaintiff's lumbar spine

showed only mild to moderate degenerative changes and bulges, with "no significant canal stenosis or fracture at any level" or nerve root compression. (TR 27.) The ALJ also emphasized how Plaintiff's treating neurologist, Dr. Maaz "reported that the claimant was able to perform heel-toe and tandem walks without difficulty in 2012, 2014, and 2015," and that the consultative examiner opined that Plaintiff did not require a cane. (TR 32.) As another example, Plaintiff testified that he could not write continuously, or use buttons and zippers, but the ALJ highlights an electromyography/nerve conduction study conducted in August 2011 which showed only "*mild* bilateral median sensory neuropathy across the wrists (carpal tunnel syndrome)." (TR 28.)

The ALJ also discussed facts in the record that are relevant when weighing the factors listed in 20 C.F.R. § 404.1529(c)(3). Particularly with regard to Plaintiff's alleged mental limitations, the ALJ found that Plaintiff's ability to drive a car, manager money, and complete his Adult Function Report show "at least a basic degree of cognitive functioning and capacity for sustained focus." (TR 25.) The ALJ also mentions that Plaintiff's treating doctors have controlled Plaintiff's symptoms with "conservative treatment," and that Plaintiff has a "demonstrated capacity for daily activities consistent with work-like activities." (TR 26.) Finally, the ALJ discussed Plaintiff's credibility with regard to an IQ test performed by Dr. Nick Boneff:

> Dr. Boneff administered the CTONI-2 test to measure the claimant's IQ, but opined that the test results were invalid because he obtained "extremely low IQ scores on this test, much lower than the level of cognitive functioning he seemed to display in his answers and ability to provide information during the interview" (Exhibit 19F/3). He also opined that the claimant's low scores were the result of "insufficient effort on his part" (Exhibit 19F/4). Overall, Dr. Boneff's examination revealed only moderate cognitive and social limitations in the claimant, and the claimant's CTONI-2 performance results reflect negatively on the issue of credibility.

(TR 36.)

The immediate discussion demonstrates that the ALJ set forth legitimate reasons for discrediting Plaintiff's hearing testimony and written statements, some of which apply some of the factors set forth in 20 C.F.R. §§ 404.1529(c)(3) and SSR 96-7p. Moreover, the ALJ supported his finding that the severity of Plaintiff's subjective complaints was not supported by the objective medical evidence by explicitly discussing and citing to several examples of inconsistency between Plaintiff's complaints and the medical record. Thus, the ALJ's decision is sufficiently specific to make clear to Plaintiff and to the court the weight that he gave to Plaintiff's statements and the reasons for that weight. The ALJ's assessment of Plaintiff's credibility is supported by substantial evidence and should not be disturbed; Plaintiff's Motion should be denied in this regard.

4.      *The ALJ's Step 5 Determination*

Plaintiff's last argument is that the Commissioner failed to satisfy his burden of proof at Step 5. Plaintiff argues, "[i]n this case, the Commissioner failed to satisfy this burden of proof as the ALJ relied on the VE's testimony in response to a question which failed to include all of the limitations supported by the record." (Docket no. 12 at 24.) As Defendant points out, however, this argument does not actually challenge the ALJ's Step 5 determination in that Plaintiff does not challenge the VE's qualifications or argue that the ALJ's question to the VE did not match the RFC detailed in the ALJ's decision. Rather, Plaintiff challenges the ALJ's formulation of Plaintiff's RFC. As discussed above, however, the undersigned finds the ALJ's formulation of Plaintiff's RFC is supported by substantial evidence. Therefore, Plaintiff's last argument is without merit, and Plaintiff's Motion should be denied in this regard.

VI.      **CONCLUSION**

For the reasons stated herein, the court should **DENY** Plaintiff's Motion for Summary Judgment (docket no. 12) and **GRANT** Defendant's Motion for Summary Judgment (docket no. 13).

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: August 11, 2017          s/ Mona K. Majzoub
                                       MONA K. MAJZOUB
                                       UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated: August 11, 2017                 s/ Leanne Hosking
                                                   Case Manager